[No. G035470. Fourth Dist., Div. Three. Sept. 27, 2006.]

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, Plaintiff and Respondent, v.
B.C.B.U. et al., Defendants and Appellants.

494

COUNSEL

Kevin E. Monson for Defendants and Appellants.

Kutak Rock, Edwin J. Richards and Grace Y. Horoupian for Plaintiff and Respondent.

OPINION

**BEDSWORTH, Acting P. J.**—B.C.B.U. and Dee R. Bangerter, its president (collectively, B.C.B.U.), appeal from a judgment for Wells Fargo Bank Minnesota, National Association (Wells Fargo) in this action for breach of a finance lease.[1] They argue that B.C.B.U. (lessee) and Bangerter (guarantor) have valid defenses against Wells Fargo (assignee) despite a lease clause that waived all defenses against an assignee. One argument raises an issue of first impression—whether the applicable law is California Uniform Commercial Code section 9403 (waiver of defenses against assignee enforceable) or California Uniform Commercial Code section 10407 (lease only enforceable upon delivery of goods).[2] We conclude section 9403 governs and affirm.

---

[1] Although B.C.B.U. is a corporation, it was not named as such in the caption of the complaint or the judgment. Hence our caption likewise omits the corporate designation.

[2] All subsequent statutory references are to the California Uniform Commercial Code unless otherwise indicated.

B.C.B.U. operates a nursing home and in-home care service in Bountiful, Utah.[3] In October 2000, it sought financing to acquire computer equipment and entered into negotiations with Crocker Capital, Inc., a company that acquires and leases equipment to businesses. In November, while the parties were still negotiating, Crocker sent lease documents to Bangerter for signature. A company representative assured Bangerter it was common industry practice to execute documents in advance, but not date them, and said Crocker would hold the documents in escrow until a deal was reached.

Bangerter signed the documents on November 22, 2000, and returned them to Crocker. They included an equipment lease, an "Acknowledgment and Acceptance of Equipment" (acceptance certificate), "Equipment Schedule A," and Bangerter's personal guaranty of the lease. The parties stipulated the documents "were not dated" when sent to Crocker.

The lease recites it was entered into on November 22, 2000, and Bangerter's signature is dated the same day. Crocker's signature is dated December 4, 2000. The lease states the parties intend it to qualify as a statutory finance lease under California Uniform Commercial Code, article 2A.[4] Paragraph 18 provides the lease is assignable, and "[l]essee shall not assert against the assignee any defense, counterclaim or set-off that [l]essee may have against [l]essor." The lease further provides it is to be governed by California law, and suit may be brought in the county of Crocker's principal place of business, identified in the lease as Newport Beach.

The acceptance certificate describes the leased equipment as that shown on "attached Schedule A." It states B.C.B.U. received the equipment in good condition and accepted the equipment unconditionally. Bangerter's signature on the acceptance certificate is undated. Next to it appear the typewritten words "Date of Acceptance," and below that December 4, 2000, is filled in. Below the date the following warning appears: "Important: This document has legal and financial consequences to you. Do not sign this document until you have actually received all of the equipment and are completely satisfied with it."

Equipment Schedule A, which lists the leased equipment, states it is attached to, and a part of, the lease between B.C.B.U. and Crocker. It is signed by both parties. Bangerter's signature is dated November 22, 2000, and Crocker's bears the date December 4, 2000.

---

[3] The facts are drawn from the parties' joint stipulation of facts and declarations, upon which the case was tried.

[4] Uniform Commercial Code, article 2A codifies the law regarding leases of goods. When California adopted this addition, it placed it in California Uniform Commercial Code, division 10. (Compare Cal. U. Com. Code com. with U. Com. Code com., both at 23C West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 10101, pp. 327, 329.)

On December 4, 2000, Crocker assigned the lease and guaranty to a third party, for approximately $99,000. It was stipulated that the lease documents "were dated by Crocker without the knowledge or permission of B.C.B.U." We understand that to mean Crocker's unauthorized act was affixing its signature, and the date of December 4, 2000, to the documents.

The B.C.B.U. lease was included in a pool with other leases and used in a securitization transaction. In brief, securitization involves issuing negotiable notes secured by a pool of leases, with the leases assigned to a third party trustee for the benefit of the holders of the notes. On December 8, 2000, the B.C.B.U. lease was included in a pool delivered to Wells Fargo, as trustee, for review. It found nothing amiss. On December 11, 2000, the lease and guaranty were assigned to Wells Fargo as trustee.

Meanwhile, B.C.B.U. and Crocker were unable to come to terms. On January 30, 2001, the parties rescinded the lease, with Crocker returning B.C.B.U.'s first and last month's lease payments, which had been paid at the time the documents were signed. No equipment was ever delivered to, or accepted by, B.C.B.U.

Two years later, in January of 2003, Wells Fargo brought suit alleging causes of action for breach of the lease against B.C.B.U., and for declaratory relief establishing the enforceability of both the lease and Bangerter's guaranty. In an answer, B.C.B.U. and Bangerter raised the affirmative defenses of failure to state a cause of action, cancelation of the lease, and failure of consideration, among others.[5]

The case was tried on stipulated facts and several declarations setting forth the facts related above. In a statement of decision, the trial judge found the waiver of defense clause in the lease was enforceable under section 9403, and Wells Fargo took the assignment free of the defenses raised by B.C.B.U. and Bangerter. The judge found Wells Fargo was entitled to recover $107,656.24, plus interest, from B.C.B.U. and declared Bangerter's guaranty was valid and enforceable. Judgment was entered accordingly.

I

B.C.B.U. argues section 9403 does not apply for several reasons. We consider—and reject—each in turn.

---

[5] B.C.B.U. also filed a cross-complaint against Crocker, which it later dismissed. Its brief describes Crocker as "defunct."

## A

■ B.C.B.U. contends section 10407 controls leases, and the lease is unenforceable under section 10407 because B.C.B.U. never accepted the goods. But, as we shall explain, when a lease is assigned, it falls under the rubric of section 9403. That section governs the rights of an assignee who meets its requirements and allows enforcement of a waiver of defenses clause that would not otherwise be enforceable under section 10407.

Section 9403 provides, in relevant part, as follows:

"(b) Except as otherwise provided in this section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by the assignee that takes an assignment that satisfied all of the following conditions: [¶] (1) It is taken for value. [¶] (2) It is taken in good faith. [¶] (3) It is taken without notice of a claim or a property or possessory right to the property assigned. [¶] (4) It is taken without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under subdivision (a) of section 3305.

"(c) Subdivision (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under subdivision (b) of Section 3305."

Account debtor "means a person obligated on an account, chattel paper, or general intangible. . . ." (§ 9102, subd. (a)(3).) Account "means a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, *leased*, licensed, assigned, or otherwise disposed of . . . ." (§ 9102, subd. (a)(2), italics added.)

The official comment to section 9403 explains "this section is designed to put the assignee in a position that is no better and no worse than that of a holder in due course of a negotiable instrument under Article 3." (Cal. U. Com. Code com. 3, reprinted at 23B West's Ann. Com. Code (2002 ed.) foll. § 9403, p. 486.) *Equico Lessors, Inc. v. Mines* (1978) 84 Cal.App.3d 374 [148 Cal.Rptr. 554] reached the same conclusion. In an action by the assignee of an equipment lease, the court held the only defenses available to the lessees were those available to a holder in due course of a negotiable instrument, and failure of consideration was not such a defense.[6]

---

[6] *Equico Lessors, Inc. v. Mines, supra*, 84 Cal.App.3d 374 was decided under former section 9206, the source of present section 9403. (Cal. U. Com. Code com. 1, reprinted at 23B West's Ann. Com. Code, *supra*, foll. § 9403, p. 486.) Former section 9206, subdivision (1) provided, in relevant part, as follows: "[A]n agreement by a buyer or lessee that he will not assert against

Section 10407 provides in relevant part:

"(a) In the case of a finance lease that is not a consumer lease, the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods.

"(b) A promise that has become irrevocable and independent under subdivision (a): [¶] (1) Is effective and enforceable between the parties, and by or against third parties including assignees of the parties; and [¶] (2) Is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs."

■ At first glance, sections 9403 and 10407 appear to conflict. Section 10407 provides that lease promises do not become irrevocable until acceptance of the goods, and only then may the promises be enforced by an assignee. On the other hand, section 9403 provides an assignee who meets its requirements may enforce a waiver of defenses clause and is subject only to defenses good against a holder in due course of a negotiable instrument.

But closer analysis reveals that section 9403 was meant to govern even if another law would not permit an assignee to enforce the waiver of defenses. Comment 4 to section 9403 provides that such "other law, and not this Article, determines the effectiveness of an account debtor's undertaking to pay notwithstanding, and not to assert, any defenses or claims against an assign*or*—e.g., a 'hell or high water' provision in the underlying agreement that is assigned. . . . If other law prevents the assignor from enforcing the undertaking, this section nevertheless might permit the assignee to do so. The right of the assignee to enforce would depend upon whether, under the particular facts, the account debtor's undertaking fairly could be construed as an agreement that falls within the scope of this section and whether the assignee meets the requirements of this section." (Cal. U. Com. Code com. 4, reprinted at 23B West's Ann. Com. Code, *supra*, foll. § 9403, pp. 486–487.)

■ Comment 2 to section 9403 addresses the scope of section 9403. It provides that subdivision (b) "generally validates an agreement between an account debtor and an assignor that the account debtor will not assert against an assignee claims and defenses that it may have against the assignor. These

an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the division on commercial paper (Division 3). . . ."

agreements are typical in installment sale agreements and leases." (Cal. U. Com. Code com. 2, reprinted at 23B West's Ann. Com. Code, *supra*, foll. § 9403, p. 486.)

Thus, we have unmistakable direction that section 9403 was intended to apply even where other law prevents an assignee from enforcing a waiver of defenses clause, so long as the agreement is within its scope and the assignee meets its requirements. Here, the lease is within the scope of section 9403, subdivision (b). It is an agreement between B.C.B.U. as account debtor and an assignor (Crocker) not to assert against an assignee (Wells Fargo) claims and defenses it has against the assignor. And this is the type of transaction to which section 9403, subdivision (b) is intended to apply: As the comment recognizes, waiver of defense clauses are typical in leases. The assignee, Wells Fargo, has met all four of section 9403's requirements. So we have little doubt the B.C.B.U. lease is governed by section 9403.

So read, sections 9403 and 10407 may be seen as consistent. Section 10407 governs relations between parties to a finance lease prior to acceptance of the goods. But once the lessee accepts the goods, or, as here, the lessee executes documents that on their face *say* he has accepted the goods, his rights against some—but not all—assignees are governed by section 9403. It is only the assignee who, in effect, qualifies as a holder in due course who enjoys the benefits of section 9403. Those who do not have recourse only to section 10407. In other words, once there is an assignment to one who qualifies for holder in due course status under section 9403, that section imposes additional rules beyond those of section 10407.

Sound policy also supports our understanding that section 9403 must govern the instant dispute between an assignee with holder in due course status and an account debtor (lessee). Securitization is the modern version of the historical practice of financing by factoring, in which a factor bought a creditor's accounts by paying a percentage of the face value and receiving an assignment of the accounts. (See generally 4 White & Summers, Uniform Commercial Code (5th ed. 2002), § 30-7, pp. 45–46.) Enforcing a waiver of defenses, save for those that would be good against a holder in due course of a negotiable instrument, promotes the transfer of accounts by allowing a purchaser to rely on the face of the documents. Thus, the lessee, like the maker of a negotiable instrument, bears the risk of putting into the stream of commerce documents that appear regular on their face but have underlying flaws.

B.C.B.U. argues California Uniform Commercial Code section 10407 applies under the general principle of statutory interpretation that a specific statute controls over a more general one. (Code Civ. Proc., § 1859.) It also relies on general provisions of division 10 that state division 10 is intended to apply to leases. But we are not persuaded.

This case involves not the creation of a finance lease, or a dispute between lessor and lessee. Rather, it involves a security transaction, where an account has been sold to a third party and the dispute is between the account debtor and the assignee. Section 9403 specifically covers this situation, and it also covers the situation where other law prohibits the enforceability of a waiver of defenses clause. That is not to say section 9403 controls as the more specific statute, only that the general canons cited do not provide any useful guidance, let alone compel the conclusion argued for by B.C.B.U.

No more convincing is B.C.B.U.'s argument that the later enactment of section 10407 (Stats. 1988, ch. 1359, § 5, p. 4502, operative Jan. 1, 1990) supersedes the earlier decision in *Equico Lessors, Inc. v. Mines, supra,* 84 Cal.App.3d 374. We take the thrust of the argument to be that the rule of *Equico,* which enforced a waiver of defenses clause under the predecessor of section 9403, was abrogated by the later enactment of section 10407. We don't think so. Nothing in section 10407, or the accompanying comments, mentions *Equico,* and nothing in the statute compels the conclusion it was promoted by *Equico.* Indeed, if we were to go by date of enactment, we would have to find section 9403 controlling, since *it* was the later adopted of the two statutes, having been most recently reenacted in 2000. (Stats. 2000, ch. 1003, § 20, operative July 1, 2001.)

B.C.B.U. also contends it would be unfair to enforce the lease because it is the party who acted reasonably, believing Crocker would hold the documents in escrow. That is—not to put too fine a point on it—hogwash.

As between the two innocent parties before us, B.C.B.U. is the one that had the ability to protect itself and prevent the instant loss. It took a substantial risk in signing documents that reflected a completed transaction when it was still negotiating for a deal that ultimately fell through. The simple expedient of refusing to do so would have prevented the loss. In signing the key acceptance certificate, Bangerter ignored a printed warning right next to the line where he signed, which told him not to sign "until you have actually received all of the equipment and are completely satisfied with

it." Wells Fargo, on the other hand, had no way of knowing the lease and guaranty were other than what they appeared to be. So, far from being unfair, enforcing the waiver of defenses is the only just result on the facts before us.

B

B.C.B.U. argues Wells Fargo cannot take advantage of section 9403 because Schedule A was not attached to the acceptance certificate, so Wells Fargo had notice of a failure of consideration defense. We disagree. The trial judge found there was no notice and, in any event, failure of consideration is not a defense under section 9403.

The trial judge found Schedule A "was intended to be an attachment to at least three of the various transaction documents and it accompanies all of them in the file but is not physically attached to any of them. This state of the transaction documents is not unusual and did not give Wells [Fargo] notice of the potential existence of such a claim or defense which would deprive it of Commercial Code section 9403." There is no suggestion the finding is unsupported by the evidence, so there is no merit to B.C.B.U.'s insistence the finding was factually incorrect.

B.C.B.U. is also mistaken on the law. The only defenses against an assignee who satisfies section 9403 are those available against a holder in due course. (§ 9403, subd. (c); *Equico Lessors, Inc. v. Mines, supra*, 84 Cal.App.3d at p. 377.) The settled law is that failure of consideration is not a defense against a holder in due course. (See, e.g., *ibid.*)[7] So, Wells Fargo did not take with notice of any defense to the lease.

---

[7] B.C.B.U.'s argument that failure of consideration is a defense under section 9403 relies on misleading quotations from two statutes. Section 9403, subdivision (b) provides that an agreement containing a waiver of defenses against an assignee is enforceable if four requirements are satisfied. The last, found in section 9403, subdivision (b)(4) is as follows: "It is taken without notice of a defense *or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under subdivision (a) of Section 3305.*" (Italics added.) The italicized language is omitted in B.C.B.U.'s citation of this provision, leaving the misleading impression that any section 3305, subdivision (a) defense may be asserted against an assignee.

B.C.B.U. then relies on section 3305, subdivision (a)(2), which provides that the right to enforce an obligation to pay an instrument is subject to contract defenses. But here it fails to acknowledge section 3305, subdivision (b), which provides that a holder in due course is *not* subject to the defenses set out in subdivision (a)(2), or claims in recoupment (setoff) against a person other than the holder. (There is no suggestion that recoupment is a defense here). While spirited advocacy is the hallmark of good lawyering, and on the whole appellate counsel has done an able job of making the best of a tough case, leaving key language out of a statute to the point that the meaning is changed cannot be encouraged.

## C

B.C.B.U. raises three further defenses under section 9403 that we consider together. They are: (1) the lease is unenforceable because there was no meeting of the minds; (2) material alteration voided the lease; and (3) the lease was canceled. None are available under section 9403.

■ Under section 9403, the only defenses against an assignee who takes for value, in good faith, without notice of a property or possessory right to the property in question, and without notice of certain claims or defenses in recoupment, are those defenses that may be asserted against a holder in due course of a negotiable instrument under section 3305, subdivision (b). Section 3305, subdivision (b) provides that, with exceptions not relevant here, a holder in due course is subject to defenses set out in section 3305, subdivision (a)(1). Those defenses are infancy, duress, lack of legal capacity, "illegality of the transaction which, under other law, nullifies the obligation of the obligor," fraud in the inducement, and discharge in insolvency proceedings. (§ 3305, subd. (a)(1).)

### (i)

■ As can be concluded from the preceding paragraphs, lack of mutual assent is not a defense against a holder in due course. B.C.B.U. contends that makes no sense, because it means anyone's name could be forged on any contract that would become enforceable in the hands of a holder in due course. But this is not a forgery case, and we have no occasion to consider how one should be decided. We do note, however, that unlike the forgery victim who cannot protect himself, B.C.B.U.'s predicament is of its own making. B.C.B.U. knowingly signed a lease that it claims did not reflect the parties' agreement, and simple prudence on its part could have prevented the loss. In any event, the issue here is lack of an agreement, and that is not a defense against a holder in due course.

### (ii)

B.C.B.U. argues that material alteration of a contract renders it void under contract law,[8] and an agreement that the law declares void is also illegal. This is a yeoman effort, but we can't make it work.

---

[8] Civil Code section 1700 provides: "The intentional . . . material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

■ A holder in due course is not subject to the contract defense of material alteration (§ 3305, subds. (a)(1), (b)), and B.C.B.U.'s attempt to bootstrap material alteration into an illegality defense does not work. The instant contract, even if void because of a material alteration as B.C.B.U. argues, is not illegal.

While illegal contracts are void, not all void contracts are illegal. Comment 1 to section 3305 explains that "[i]llegality is most frequently a matter of gambling or usury, but may arise in other forms under a variety of statutes. The statutes differ in their provisions and the interpretations given them. They are primarily a matter of local concern and local policy. All such matters are therefore left to local law. If under that law the effect of . . . the illegality is to make the obligation entirely null and void, the defense may be asserted against a holder in due course. Otherwise it is cut off." (Cal. U. Com. Code com. 1, reprinted at 23A pt. 2 West's Ann. Com. Code, *supra*, foll. § 3305, p. 327.) Under California law, a contract is illegal if it has an unlawful object (Civ. Code, § 1598) or unlawful consideration (Civ. Code, § 1607), and such contracts are void. (Civ. Code, §§ 1598, 1608.)

Here, B.C.B.U. does not suggest the lease had an unlawful object or unlawful consideration. Rather, it cites material alteration cases that say such a contract is either void or voidable. Either way, that does not make for an illegal contract, but—at best—just a void one. There is no illegality defense here.

(iii)

The cancelation argument is that the rescission of the lease by B.C.B.U. and Crocker amounted to a modification of an assigned contract that is effective against an assignee under section 9405. We cannot buy this one either.

Section 9405 provides in relevant part as follows. "(a) A modification of or substitution for an assigned contract is effective against an assignee if made in good faith. The assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that the modification or substitution is a breach of contract by the assignor. . . . [¶] (b) Subdivision (a) applies to the extent that either of the following apply: [¶] (1) The right to payment or a part thereof under an assigned contract has not been fully

earned by performance. . . ." Comment 2 explains "[t]he ability of account debtors and assignors to modify contracts can be important, especially in the case of government contracts and complex contractual arrangements (e.g., construction contracts) with respect to which modifications are customary." (Cal. U. Com. Code com. 2, reprinted at 23B pt. 2 West's Ann. Com. Code, *supra*, foll. § 9405, p. 495.)

■ The problem here is that *cancelation* of a contract cannot be said to be a "modification of," or "substitution for," the contract assigned under section 9405. The statute deals with the situation where "[t]he assignee acquires corresponding rights under the modified or substituted contract." (§ 9405, subd. (a).) When a contract is canceled or rescinded, there are no rights that can pass to the assignee to replace those under the assigned agreement. So cancelation of the lease is not a defense for B.C.B.U.

B.C.B.U. insists this reading leads to an anomalous result because it means someone who modifies the lease amount down to a dollar is treated completely different than someone who rescinds. But we see no anomaly. True it is that the functional difference between a modification of the lease amount to a dollar and the rescission of the contract is nugatory in financial terms. But it could greatly affect a trier of fact's assessment of the good faith required by section 9405 for such an assignment. The section does not allow *any* modification of the lease prior to assignment; it allows a *good faith* modification.

But regardless of the reason the Legislature chose to differentiate between modification and rescission, it did. The statute does not say the lease can be modified *or rescinded* prior to notification of assignment, it says it can be modified. And the next sentence talks about the rights under the contract after the modification—obviously contemplating the continued existence of the contract, which of course would make no sense after a rescission. Both these facts militate against the interpretation advocated by B.C.B.U.

Alternatively, B.C.B.U. contends the cancelation was valid under section 9406. The argument goes like this. An account debtor may discharge its obligation by dealing with the assignor prior to notification of the assignment, so the January 2001 cancelation is valid because B.C.B.U. was only notified of the assignment when the instant action was commenced in January 2003. It is mistaken.

Section 9406, subdivision (a) provides that "an account debtor on an account . . . *may discharge its obligation by paying the assignor* until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." (Italics added.)

The flaw in B.C.B.U.'s argument is apparent from the portion of section 9406, subdivision (a) italicized above. The statutory defense is discharge by *paying* the assignor prior to notice of an assignment, *not* by other dealings such as cancelation of the lease. Section 9406 simply has no bearing in this case.

The upshot is that section 9403 applies to this transaction. Wells Fargo met the requirements of section 9403 and acquired holder in due course status, and B.C.B.U. did not establish any defenses valid against a holder in due course. While sympathetic to B.C.B.U.'s plight, we find unavailing its attempts at extrication from the swamp it so rashly entered by signing a document that fairly shouted, "Do not sign me."[9]

## II

B.C.B.U. argues it was error to admit the acceptance certificate because it was an incomplete document that was not properly authenticated. Its theory is that the document was incomplete because Schedule A was not attached, and Wells Fargo failed to account for this as required of a party proffering an altered document. (Evid. Code, § 1402.) We disagree.

The trial judge overruled the objection on the ground that the claimed alteration went to the legal significance of the document, not its authenticity. That was clearly right. There was no dispute that the document offered was the acceptance certificate signed by B.C.B.U., since it was stipulated that Bangerter signed the acceptance certificate (along with Schedule A and all of the other lease documents) in his capacity as authorized officer of

---

[9] In a late petition for rehearing, B.C.B.U. raises a new argument, that section 9403 does not apply because it became operative on July 1, 2001, after the December 2000 assignment to Wells Fargo. Unfortunately, like the petition for rehearing, which raised it for the first time, it comes too late (the petition for rehearing was seven days late). An argument may not be raised for the first time in a petition for rehearing. (See, e.g., *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) Moreover, section 9403 is based on former section 9206 (set out in fn. 6 above), and the former rule was the same as the present one, that is, a waiver of defenses against an assignee is enforceable save for defenses good against a holder in due course.

the B.C.B.U. The trial judge acted within his discretion in ruling the acceptance certificate was admissible.

■ Since the waiver of defenses clause in this equipment lease is enforceable by Wells Fargo as assignee of the lease under California Uniform Commercial Code section 9403, and B.C.B.U. has not established any defense cognizable under that statute, or shown any other error, the judgment must be affirmed. Respondent is entitled to costs on appeal.

O'Leary, J., and Ikola, J., concurred.

A petition for a rehearing was denied October 27, 2006, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied January 24, 2007, S147900. Baxter, J., and Corrigan, J., did not participate therein.