Filed 10/13/15  21st Capital Corp. v. Onodi Tooling & Engineering Co. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| 21ST CAPITAL CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ONODI TOOLING & ENGINEERING COMPANY,<br><br>    Defendant and Respondent. | B252080<br><br>(Los Angeles County<br>Super. Ct. No. BC469275) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Sanchez-Gordon, Judge.  Affirmed.

Law Offices of Martin F. Goldman and Martin F. Goldman for Plaintiff and Appellant.

Khan Law Office and Amman A. Khan for Defendant and Respondent.

—————————————

# INTRODUCTION

Plaintiff and appellant 21st Capital Corporation, a factoring company, advanced money to nonparty Motor City in exchange for an assignment of Motor City's accounts receivable, including the account of defendant and respondent Onodi Tooling & Engineering Company. When Onodi failed to pay invoices it contended were fraudulently created by Motor City, 21st Capital sued Onodi, claiming 21st Capital was a holder in due course of the accounts receivable and that Onodi had waived its defenses to payment, under California's Uniform Commercial Code.[1] After a bench trial, the trial court found in Onodi's favor, specifically crediting Onodi's evidence and finding 21st Capital's computer evidence unreliable. On appeal, 21st Capital contends, in a misapplication of the standard of review, that there is substantial evidence to support judgment in its favor. Because substantial evidence supports the judgment in Onodi's favor, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

## I.     Factual background.

Onodi builds parts for the United States military. Under a master solicitation agreement, Prosperity Invest, Inc., doing business as Motor City (Motor City), agreed to paint those parts for Onodi. The relationship between Motor City and Onodi worked this way: Onodi would issue a purchase order and send the part to be painted to Motor City. Motor City painted the part and returned it to Onodi. Onodi inspected the painted part, and, if it was properly done, paid Motor City's invoice.

---

[1]     All undesignated statutory references are to the California Uniform Commercial Code.

[2]     Onodi filed a motion to strike files from 21st Capital's memory stick, submitted on appeal on February 13, 2015. To the extent the memory stick contains matters not admitted into evidence in the trial below, the motion is granted. We have considered only those matters admitted into evidence.

2

In January 2008, Motor City entered into an accounts receivable factoring agreement with 21st Capital under which 21st Capital advanced money to Motor City.[3] In exchange, Motor City assigned Onodi's accounts receivable to 21st Capital.[4]

To service its clients, 21st Capital created a website that allows clients to create invoices online using a template.[5] Clients (e.g., Motor City) can store information in a "line items database."[6] Before a client can create invoices, it must create a customer, which includes information about who is authorized to approve invoices. When a client such as Motor City creates an invoice, the invoice is sent or "released" to the account debtor (e.g., Onodi) for approval.[7] When an invoice is sent to the account debtor, the debtor logs into 21st Capital's website and approves or rejects or takes no action on the invoice. The online invoice contains a link or a window to an invoice confirmation agreement, stating that the account debtor "agrees not to assert any CLAIM or DEFENSE against Factoring Company, the assignee, that it may have against [Motor City] (UCC 9403 and 9404), except for the allowed deduction."

When Motor City entered into the factoring agreement with 21st Capital, Motor City helped "set up" the financing arrangements between 21st Capital and Onodi. Chris Marshall and Jesus Calvo from Motor City "took our [Onodi's] information, our e-mail, that stuff down, and they set the whole account up." Renee Sharp was the person at

---

[3] 21st Capital targeted small businesses that were "undercapitalized and without the necessary internal capital to handle orders from their own customers."

[4] This type of tripartite relationship is known as "factoring."

[5] The company is "basically paperless."

[6] Alternatively, clients can create their invoices offline but give 21st Capital access to their Quickbooks.

[7] Although the invoice is from Motor City, the invoice form has 21st Capital in the corner.

Onodi initially authorized to approve invoices and to pay invoices.[8] Motor City later identified, on July 30, 2010, Mike Rempert to approve and to pay invoices. When an invoice arrived from 21st Capital, Sharp would confirm with Rempert that Motor City had properly painted the part. An invoice would not be approved unless Rempert determined that the service was rendered and the appropriate documentation was received. "If everything was good," Sharp or Rempert clicked the "approved" box on the computer invoice.

When an invoice was approved, the following language box was added to the invoice: "**THIS IS A PRE-APPROVED INVOICE**. Mike Rempert, an authorized agent of your organization, has agreed that this invoice is valid and will be paid in full to 21st Capital Corp. and not to your Vendor, pursuant to a binding internet agreement. Type the following into the address box of your web browser (e.g., Internet Explorer or Firefox) to view/print the agreement:

https://www.21stcapital.com/jinvoice/approval/receipt.jspx?invoiceId=72939

**This invoice was created online at the 21st Capital Corp website: http://www.21st capital.com/ and factored by your vendor, Prosperity Invest, Inc.**" But if an invoice was rejected, an e-mail was sent to the client informing it of the rejection. If an invoice was rejected or if no action was taken on it, it did not just disappear from 21st Capital's website. Neither Onodi nor Motor City could remove an invoice once it was released from the website.

In approximately February 2011, Onodi began receiving problematic invoices from Motor City for work never authorized by Onodi or performed by Motor City. Some invoices, for example, referred to nine-digit purchase order numbers, although Onodi used five-digit purchase order numbers; the invoices were for high amounts that Onodi never billed;[9] and they contained incorrect part numbers. When these problems arose

---

[8]    To get into 21st Capital's website, someone would need a username, password and secure link. The secure link can be cut and pasted into a browser.

[9]    A painter like Motor City, for example, would never have an invoice for an amount as high as $25,000.

with the invoices, Rempert did not click the "approve" or "reject" button on 21st Capital's website. Sharp also did not authorize payment for the invoices.

Instead, Onodi called Motor City. Marshall, Motor City's president, assured Onodi he would take care of the problem. Marshall apologized for the situation and said he would do anything he could to pay off the debt. Marshall admitted that someone from Motor City was sending fake invoices.[10]

Jack Ford, 21st Capital's president, became aware there was a problem with the Onodi account in May 2011, when Sharp informed 21st Capital that some of the invoices did not belong to Onodi. Ford discovered that some payment checks purporting to be from Onodi were different than those Onodi generally used to pay invoices.[11] Some payments were made by cashier's checks, which Onodi did not use. Onodi paid invoices with company checks. 21st Capital stipulated that Motor City issued cashier's checks that were credited to Onodi's account.

Notwithstanding that some of the invoices billed to Onodi were fraudulent, 21st Capital maintained that Onodi had approved the invoices and waived any defense to them. Specifically, over the course of Motor City's and 21st Capital's relationship, Motor City submitted 2,088 invoices to 21st Capital in connection with Onodi. According to Ford, Onodi rejected none but failed to pay 84 open invoices totaling $273,460.56. To substantiate its claim that Onodi approved all invoices, including the fraudulent ones, 21st Capital produced computer forensic data, including "summary of actions" pages containing statements that Rempert approved the challenged invoices.

David Clark also testified that he wrote the software, including code, and managed the website for 21st Capital.[12] Postgre S.Q.L. is a database system that allows companies

---

[10]  John Onodi, Onodi's owner, told Marshall that Onodi could no longer do business with Motor City. Mr. Onodi reported Marshall to the police.

[11]  Payment checks were sent to 21st Capital's "lockbox" at Wells Fargo Bank. 21st Capital did not have access to that lockbox but an image of the check was emailed to the company.

[12]  Clark worked out of his house in Texas.

5

to track and maintain large amounts of data. The database captures whether invoices are approved. When the "agree" button is clicked on an invoice, 21st Capital's software captures the data on the form. The invoice confirmation agreement is also stored. A courtesy e-mail is sent to 21st Capital's client notifying it of the approval.

Onodi, however, disputed the credibility of 21st Capital's computer evidence. Onodi's engineer, Paul Chenier, has a post bachelor's degree in computer science. He reviewed data that 21st Capital made available in Dropbox. He found the summary of actions pages produced by 21st Capital insufficient to show that Rempert approved the challenged invoices because "that's not real electronic data. That's just text that's been printed out of somewhere. I could print that out in WordPerfect or in Word or through my own laptop at home if I needed to." Chenier ran queries in 21st Capital's program database but did not find any "approve or rejects to invoices." There was no data "captured on a session I.D. through a web browser saying that a person actually approved an invoice at a specific time, with their login and password." He found no evidence Rempert approved the fraudulent invoices or "clicked on any invoices." Indeed, Ford, 21st Capital's president, testified that when someone clicks an " 'approve' " or " 'reject' " button (known as a radio button), "[n]o data is collected from any radio button anywhere on the internet."

If 21st Capital's program had been written correctly, 21st Capital could have provided electronic evidence to substantiate its claim that Rempert clicked "approve." That data could have been captured in an electronic database, which could have been run in court. A problem Chenier saw was that 21st Capital used "open source code"[13] and made changes, sometimes on a weekly basis, to its program code without testing or validating those changes. A large percentage of the open source code was "grabbed from several different sources on the internet" and only a small percentage of the code was

---

**13**    Open source code is "basically, a group of people on the internet, and they're kind of anonymous people that work together to create, you know, a particular program or develop some software together through, you know, collaborating on the internet, and you have no idea who these people are."

custom. Open source code is problematic because anonymous people on the internet design it, and "holes" are not fixed by vendor updates. Notifications that there are issues with the code may not go out.

Although Ford testified that he put 21st Capital's Postgre S.Q.L. database in Dropbox to share with Onodi, Chenier merely saw a "dump of data" concerning Onodi invoices; it was only a "portion of the live database." It did not include data of Rempert clicking "approve" to accept the fraudulent invoices.

John Onodi, the company's owner, makes legal and financial decisions for the company. Sharp and Rempert were not authorized to sign contracts for the company, although they could issue purchase orders.

## II. Procedural background.

On September 9, 2011, 21st Capital sued Onodi for breach of contract, money had and received, and open book account. After a bench trial, the trial court issued its statement of decision finding for Onodi. The court found that Motor City inputted false information into 21st Capital's website, which generated false invoices to Onodi. Onodi, however, did not sign, authenticate or accept the fraudulent invoices. Instead, Onodi contacted Motor City, and it assured Onodi the problem would be taken care of. Motor City was able to keep its "fraudulent invoicing scheme in operation" by paying some of the false invoices itself and " 'self-authenticating' " the invoices.

Although 21st Capital "produced printouts of its data logs from its website to support its claim that someone from Onodi authenticated the invoices and agreed to a waiver of all defenses," the trial court found that "21st Capital's digital data lacked reliability" and that its website was "vulnerable to considerable manipulation by Motor City." The court found credible Rempert's testimony that he "<u>never</u> clicked 'I agree' on the fraudulent invoices."

The trial court thus concluded that 21st Capital was not a holder in due course of the challenged invoices and that 21st Capital was not a third party beneficiary of the invoices and invoice confirmation agreements. The court credited Onodi's evidence it did not approve those disputed invoices. In addition to its conclusion that no agreement

7

existed between 21st Capital and Onodi containing assignment and waiver of defenses clauses, the court found that no waiver of defenses under the Commercial Code "would obtain here, because any agreement to pay the disputed invoices would have been induced by fraud" and that "there is no consideration to support the disputed invoices because Motor City did nothing to earn payment under the invoices it assigned to 21st Capital."

The trial court further concluded that 21st Capital was not a holder in due course of the false invoices because it participated in the underlying transaction by creating the invoices, issuing the disputed notices and agreements from its website, sending notices to customers requiring authentication of the invoices, and performing accounts receivable and collection functions. In any event, Rempert and Sharp lacked actual or ostensible authority to waive Onodi's defenses to payment.

Judgment was entered on August 5, 2013.

## DISCUSSION

21st Capital contends that substantial evidence established it was a holder in due course of the unpaid invoices and Onodi was obligated to pay them, because Onodi waived all defenses under section 9403. This contention is based on a misunderstanding and misapplication of the substantial evidence standard of review, and we therefore reject it.

When an appellate court reviews a statement of decision issued after a bench trial, the trial court's findings of fact are reviewed under the substantial evidence standard, and the trial court's resolution of a question of law is subject to independent review. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935.) We uphold the trial court's findings of fact if there is substantial evidence to support the findings, even if other evidence would support a contrary finding. (*Ibid.*; *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874; *Romero v. Eustace* (1950) 101 Cal.App.2d 253, 254 ["When there is substantial evidence, although conflicting, that sustains the judgment an appellate court will not substitute its evaluation of the evidence or its opinion as to the credibility of the witnesses for that of the trial court"].) Although "[t]he rule that the amount of credit to be given to the

8

positive testimony of a witness is solely a question for the trial court is not applicable in a case in which the testimony, in the light of the undisputed facts, is so inherently improbable and impossible of belief as in effect to constitute no evidence at all," "[i]n order that the court may be justified in disregarding evidence as being inherently improbable and unbelievable there must exist a physical impossibility of its being true or its falsity must be apparent without resort to inferences or deductions." (*Romero*, at p. 254.) In evaluating the support for a finding, we view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Brewer,* at p. 935.) We may not reweigh the evidence and are bound by the trial court's credibility determinations. (*Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189; *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.) Appellant 21st Capital bears the burden of demonstrating that the record does not contain sufficient evidence to sustain a challenged finding of fact. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

This standard of review thus requires us to consider whether substantial evidence supports the trial court's judgment that 21st Capital was not a holder in due course of the invoices under section 9403, *not* whether there is substantial evidence to support a contrary conclusion, as 21st Capital contends. Section 9403 governs the rights of an assignee who meets the section's requirements, and it allows enforcement of a waiver of defenses clause. (*Wells Fargo Bank Minnesota, N.A. v. B.C.B.U.* (2006) 143 Cal.App.4th 493, 499.) The section is designed to put the assignee in a position that is no better and no worse than that of a holder in due course of a negotiable instrument. (*Ibid.*) The section thus provides that an agreement between an account debtor (Onodi) and an assignor (Motor City) not to assert against an assignee (21st Capital) "any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment that satisfies all of the following conditions: [¶] (1) It is taken for value. [¶] (2) It is taken in good faith. [¶] (3) It is taken without notice of a claim of a property or possessory right to the property assigned. [¶] (4) It is taken without notice of a defense or claim in recoupment of the type that may be asserted

9

against a person entitled to enforce a negotiable instrument under subdivision (a) of Section 3305."[14] (§ 9403, subd. (b).) Subdivision (b) "does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under subdivision (b) of Section 3305." (§ 9403, subd. (c).) Thus, while simple contract defenses, such as a failure of consideration, may not be asserted against holders in due course, defenses based on infancy, duress, lack of legal capacity or illegality, fraud in the inducement, or discharge in insolvency proceedings may be asserted. (§ 3305; *Wells Fargo Bank Minnesota, N.A.,* at pp. 501, 503, 504; *Equico Lessors, Inc. v. Mines* (1978) 84 Cal.App.3d 374, 377.)

The trial court found section 9403 inapplicable, because Onodi did not enter into an agreement either assigning the challenged invoices to 21st Capital or agreeing not to assert against the assignee 21st Capital defenses to the challenged invoices. The court expressly found Onodi's witnesses credible and found 21st Capital's "digital data" not credible: that data, the court said, "lacked reliability," citing, among other things, that 21st Capital's website was developed from " 'open source' " code available on the internet and that Clark made untested changes to the software on a weekly basis.

Substantial evidence supports these findings. The master solicitation agreement between Motor City and Onodi did not contain an assignment clause or waiver of defenses against any potential assignee. Rather, the assignment clause and waiver of defenses were in the individual invoices and invoice confirmation agreements, which stated that the account debtor agreed "not to assert any CLAIM or DEFENSE against Factoring Company, the assignee, that it may have against [Motor City] (UCC Sections 9403 and 9404), except for the allowed deduction." When Onodi received such an online invoice from Motor City, Onodi's designated approver (either Sharp or Rempert) would review it, and, if the service had been provided, would approve and "authenticate" it by clicking the "agree" button.

---

[14] A waiver of defenses or claims is sometimes referred to as a " ' "hell or high water" ' " clause. (*Wells Fargo Bank Minnesota, N.A., supra,* 143 Cal.App.4th at p. 500.)

Onodi, however, did not approve the fraudulent invoices or authenticate the invoice confirmation agreements for them. Sharp testified that she did not approve the fraudulent invoices. Rempert testified that he did not approve the fraudulent invoices or click "agree" to any of the challenged invoices. Onodi's engineer, Chenier, reviewed the database provided by 21st Capital and found no evidence that Rempert clicked the "agree" button as to the fraudulent invoices. Ford, 21st Capital's president, himself testified that when someone clicks an "approve" or "reject" button (known as a radio button), "[n]o data is collected from any radio button anywhere on the internet." Chenier further suggested that some of 21st Capital's "data" could have been simply reproduced by a word processor. He also questioned the vulnerability of 21st Capital's website, raising an inference that Motor City, which had set up Onodi's online account, could have accessed the website and approved the fraudulent invoices by using Onodi's account information. That Motor City was guilty of subterfuge was established by its payment of some of its own invoices, in an attempt to hide its fraudulent scheme from 21st Capital and/or Onodi.

True, 21st Capital produced evidence to the contrary. 21st Capital introduced exhibits, for example, showing that Rempert *did* approve the fraudulent invoices. Clark explained that 21st Capital's software captured approvals and rejections of invoices. "Summary of Actions" documents showed the history for each invoice, including when Onodi approved it. "Summary of Actions" documents, for example, showed that Rempert approved a fraudulent invoice on May 19, 2011 at 10:32:30 a.m. This approval was substantiated by 21st Capital's "contact history," which showed that Rempert logged into 21st Capital's system just a minute before, at 10:31:05 a.m.

The standard of review, however, dictates how we must treat such contrary evidence on appeal: we do not reweigh the evidence or make credibility determinations. (*Brewer v. Murphy, supra,* 161 Cal.App.4th at p. 935.) 21st Capital's arguments amount to nothing more than a request that we do what the standard of review forbids. That there is evidence to support a conclusion other than the one the trial court reached is irrelevant

11

where, as here, substantial evidence supports the judgment the trial court in fact reached; namely, Onodi did not authenticate or approve the challenged invoices.[15]

Based on that conclusion, the trial court also found that Onodi had therefore not waived defenses to the invoices, including ones based on failure of consideration and fraud. Substantial evidence also supports the court's conclusion that Onodi had established those defenses. Sharp and Rempert testified that the challenged invoices were for work never performed by Motor City; some challenged invoices referenced incorrect nine-digit purchase order numbers and were for amounts Onodi never billed; Marshall at Motor City admitted to Onodi that invoices were incorrect and promised to correct the problem; and Motor City paid some of its own invoices in an attempt to conceal its wrongdoing.[16]

---

[15]    21st Capital asserts that Onodi did not dispute it "authenticated" 39 unpaid invoices totaling $15,085.56. It is unclear to what 21st Capital is referring and 21st Capital does not cite to the record to substantiate this assertion. We therefore reject any claim that judgment should have, at a minimum, been entered in that amount.

[16]    Because substantial evidence supports the trial court's judgment that Onodi did not enter into an assignment agreement and waive defenses to the fraudulent invoices, we need not address other issues resolved in the statement of decision; for example, Rempert's and Sharp's apparent and ostensible authority to enter into contracts on behalf of Onodi and whether 21st Capital was not a holder in due course because of its close connection to the underlying transactions between Motor City and Onodi.

**DISPOSITION**

The judgment is affirmed.  Defendant and respondent Onodi's motion to strike files on the memory stick is granted, as set forth in this opinion.  Onodi is to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.