Filed 12/11/14  Hasso v. J & J Real Estate Holdings CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALAN HASSO, | |
| Plaintiff and Appellant, | E054774 |
| v. | (Super.Ct.No. CIVDS909740) |
| J & J REAL ESTATE HOLDINGS, LLC et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge. Affirmed.

Law Office of Michael Creamer and Michael Creamer; Robert E. Scott & Associates and Robert E. Scott for Plaintiff and Appellant.

Wagner & Pelayes and Marty E. Zemming for Defendants and Respondents.

Plaintiff and appellant Alan Hasso brought suit against defendants and respondents

J&J Real Estate Holdings, LLC, Emanuel Jacobson, David Jacobson, J.S.B. Financial

1

Corporation, and Ozcorp Funding (defendants), alleging several causes of action, including breach of fiduciary duty, fraudulent conveyance, and conspiracy. Plaintiff appeals from the trial court's grant of nonsuit in favor of all defendants on all causes of action.

Defendants have filed a motion to dismiss this appeal on the basis of a purported global settlement agreement between the parties, resolving this case as well as several others. Plaintiff has opposed that motion, claiming the settlement agreement was not fully executed, and therefore never became final and enforceable.

We find it most efficient to decline to rule whether there was a final and enforceable settlement agreement, because to do so would require resolving disputed issues of fact regarding the parties' intent. We instead affirm the trial court's ruling on the ground that plaintiff failed to meet his burden of providing an adequate record on appeal.

Additionally, we grant defendants' motion for sanctions, and impose sanctions against plaintiff's initial counsel on appeal, Michael F. Creamer, in the amount of $19,945 payable to defendants, plus $8,500 payable to the clerk of this court, for maintaining a frivolous appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff asserts in his first amended complaint causes of action for breach of fiduciary duty, conspiracy to breach fiduciary duty, fraudulent conveyance, conspiracy to commit a fraudulent conveyance, and alter ego liability. The details of plaintiff's allegations are not relevant to our disposition of the present appeal, so we will sketch

2

them only in broad strokes. Plaintiff alleges he is a judgment creditor of J.S.B. Financial Corporation and Ozcorp Corporation, and is a creditor of the other defendants, with claims not yet reduced to judgment. He contends defendants—which include individuals allegedly controlling the corporate defendants—engaged in a scheme to prevent him from collecting on the judgment against J.S.B. Financial Corporation and Ozcorp Corporation, or any judgments that may be entered against the other defendants.

On May 23, 2011, after 11 days of jury trial, the trial court granted the motions for nonsuit brought by defendants with respect to all plaintiff's claims. This appeal followed.

On November 22, 2011, all parties to this appeal signed a "Settlement Agreement and Mutual Release" (settlement agreement), which requires dismissal of this action, as well as several other actions. However, the document signed by the parties also lists a nonparty to this appeal—Ozel Fine Jewelry, Inc.—as one of the "Released Parties," and thus one of the "Parties" to the settlement agreement. Nevertheless, the document contains no signature block for Ozel Fine Jewelry, Inc., and no signature from a representative of that entity was obtained.

On October 26, 2012, defendants filed a motion to dismiss the appeal based on the settlement agreement, and an accompanying request for judicial notice. Plaintiff opposed the motion, arguing among other things, that the settlement agreement never went into

3

effect because it was not executed by all the "Parties" thereto.[1] On February 6, 2013, we issued an order denying the motion to dismiss without prejudice to the parties raising the issue of the existence of a settlement agreement as grounds for dismissal of the appeal in their briefs on appeal.

On July 11, 2013, defendants filed a motion for sanctions, arguing that sanctions are warranted because (1) plaintiff failed to provide an adequate record on appeal, (2) plaintiff's arguments in briefing misstate the law, both through mischaracterization of case law, and by failing to disclose authority that negates plaintiff's arguments, and (3) all issues on appeal were mooted by the settlement agreement.

On August 6, 2013, plaintiff filed his opposition to the motion for sanctions. On the same date, plaintiff filed a motion to augment the record, seeking to add a third volume to appellant's appendix. On October 8, 2013, we issued an order granting plaintiff's motion to augment the record, and reserving ruling on defendant's motion for sanctions. On October 29, 2013, defendants filed a supplemental brief, responding to plaintiff's augmentation of the record.

On September 9, 2014, we issued our tentative opinion in this matter, as well as an order notifying plaintiff and plaintiff's counsel, Michael F. Creamer, that the court was considering the imposition of sanctions as requested in defendants' motion filed July 11, 2013. On September 24, 2014, plaintiff substituted a new attorney in place of Mr. Creamer, and plaintiff and Mr. Creamer filed separate responses to our September 9,

---

[1] Plaintiff did not oppose defendants' request for judicial notice, which is hereby granted on that basis. (Cal. Rules of Court, rule 8.54(c).)

4

2014 order. Defendants filed a responsive brief on October 6, 2014, and on November 3, 2014, Mr. Creamer filed a reply.

## II. DISCUSSION

### A. Settlement Agreement

All the parties to the present appeal signed the settlement agreement, which requires dismissal of this appeal, among other things. But the term "Parties" is defined in the settlement agreement to also include a nonparty to this appeal, which is not a signatory. "Ozel Fine Jewelry, Inc.," though not among the defendants sued in this action, is one of the "Released Parties"; "Parties" includes "Plaintiffs" [*sic*] and the "Released Parties." The signature page of the settlement agreement, however, contains no signature from a representative of Ozel Fine Jewelry, Inc. The settlement agreement explicitly provides that it "shall become effective and fully binding as to the Parties hereto immediately upon the signing of this agreement by all of the 'Parties' to this Settlement Agreement." On its face, therefore, there is some question as to whether the settlement agreement ever became "effective and fully binding," given the lack of a signature from Ozel Fine Jewelry, Inc.

Defendants contend that Ozel Fine Jewelry, Inc. was never intended to be a signatory or subject to the terms of the settlement agreement, noting that entity was not party to the underlying litigation or to the settlement conference that produced the settlement agreement, and no space for a signature by a representative of that entity was included on the signature page of the document. Defendants further note, and plaintiff has not disputed, that defendants have paid plaintiff a substantial sum of money on the

5

understanding that the settlement agreement is valid and enforceable, notwithstanding the lack of a signature from a representative of Ozel Fine Jewelry, Inc.[2]

In opposition, plaintiff contends, among other things, that Ozel Fine Jewelry, Inc. was a "key party to the purported settlement," and the lack of a signature for that entity renders the settlement agreement unenforceable under contract law, and inadmissible under the mediation privilege. Plaintiff views obtaining the signature of a representative of Ozel Fine Jewelry, Inc., to be a "condition precedent" to completion of a final and binding settlement agreement, which was never satisfied.

We could appoint a referee to determine the disputed facts regarding the settlement agreement, and either dismiss the appeal on the basis of the settlement agreement or not, as we find appropriate after the report from the referee. (See *Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178 [discussing assignment of trial judge to act as referee to conduct evidentiary hearing to determine whether written settlement agreement is enforceable].) As discussed below, however, that course of action would be a waste of judicial resources in this case, which is more simply disposed of on other grounds.[3]

---

[2] The settlement agreement calls for total payments over time of $135,000. Of that sum, $85,000 had been paid as of the time defendants' motion to dismiss was filed, with the remaining payments due by August 15, 2013.

[3] Nothing in this opinion should be read to foreclose or prejudge the merits of any claims defendants might assert against plaintiff based on the settlement agreement, whether because it is in fact valid and enforceable, or plaintiff is estopped from denying it to be valid and enforceable, or plaintiff has been unjustly enriched by his acceptance of payments made by defendants pursuant to it, or any other grounds.

## B. Inadequate Record

In the absence of an adequate record to support an appellant's claim of error, "we presume the judgment is correct." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.) Indeed, "[t]he most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286).) "We do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16.) For the reasons discussed below, these principles are fatal to plaintiff's appeal.

Our review of a trial court's grant of a motion for nonsuit is de novo, applying the same standard governing the trial court. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541-1542 [Fourth Dist., Div. Two].) "We will not sustain the judgment '"unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law."'" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) "We may not, however, consider the supporting evidence in isolation, and disregard any contradictory evidence; rather, we must review the entire record." (*Fillpoint, LLC v. Maas* (208 Cal.App.4th 1170, 1176 (*Fillpoint*); see also *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 (*Kidron*) ["the

7

appellate court's review must be based on the whole record, not just the excerpts chosen by the appellant"].)

Here, we cannot review the entire record, because plaintiff has submitted only excerpts of it in support of his appeal. Plaintiff did not designate any of the 11 days of trial for inclusion in the reporter's transcript, instead designating only the hearing on the motions for nonsuit. Plaintiff elected to proceed by appendix in lieu of a clerk's transcript, pursuant to California Rules of Court, rule 8.124. The appendix includes, according to plaintiff, some of the documents that were exhibits at trial, as well as copies of minute orders reflecting their admission into evidence.[4] But plaintiff did not attempt to include all trial exhibits in the appendix, and the minute orders also reflect admission of many more exhibits into evidence. Plaintiff has not arranged for any original exhibits to be transmitted to this court. (See Cal. Rules of Court, rule 8.224.) De novo review of the entire record before the trial court cannot be performed on such an appellate record.

Plaintiff argues, in essence, that the record is adequate for our review because the trial court's findings of fact are in our record—as recited during the hearing on the motions for nonsuit—and we may review whether the trial court's conclusions of law flow from those findings of fact. As our colorful colleague in Division Three of the

---

[4] We cannot be certain that the documents in appellant's appendix were those admitted into evidence by the trial court, because defendant did not utilize the copies marked for identification by the clerk of the trial court when assembling the appendix of record. Defendants, however, though raising arguments regarding lack of foundation, have not quite disputed that the documents are accurate copies of some of the trial court exhibits. For present purposes, we accept plaintiff's representation that the documents included in the appendix are accurate copies of certain documents admitted into evidence in the trial court. (See Cal. Rules of Court, rule 8.124(g).)

8

Fourth District Court of Appeal might say, "hogwash." (See *Wells Fargo Bank Minnesota, N.A. v. B.C.B.U.* (2006) 143 Cal.App.4th 493, 502 ["That is—not to put too fine a point on it—hogwash."].) Plaintiff's argument flies in the face of our mandate to review the whole record, not just those excerpts of the record on which plaintiff (or even the trial court) prefers to rely. (*Fillpoint*, *supra*, 208 Cal.App.4th at p. 1176; *Kidron*, *supra*, 40 Cal.App.4th at p. 1581.)

In short, plaintiff has submitted an inadequate record to support our review of his claims of error. On that basis, the judgment will be affirmed.

## C. Sanctions

Defendants have asked that we impose sanctions for maintaining a frivolous appeal in the amount of $19,945 payable to defendants—an amount they contend equals the attorney's fees and costs they have expended in connection with this appeal—as well as an amount payable to the court to compensate for the administrative costs of processing the appeal. For the reasons stated below, we impose sanctions of $19,945 payable to defendants, plus $8,500 payable to the clerk of this court.

"Code of Civil Procedure section 907 provides that 'When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just.'" (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 31.) Similarly, under California Rules of Court, rule 8.276, the Court of Appeal may impose sanctions for taking a frivolous appeal, or committing an unreasonable infraction of appellate court rules. (Cal. Rules of Court, rule 8.276(a)(1), (4).)

9

An appeal is frivolous "when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "*Flaherty* cautions that 'any definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.'" (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 310.)

These limitations do not appear to apply here. Despite being given an opportunity to augment the record, plaintiff has not taken the steps necessary to procure a complete record, and doggedly insists that the record is adequate to address the merits of his appeal. It is not, and there is no reasonable argument that it is. Given the state of the appellate record presented to us, we conclude that the appeal lacks merit under the *Flaherty* standard and sanctions are appropriate.[5]

Defendants request an award of $19,945 in sanctions, an amount that equals their attorney fees and costs on appeal so far. Neither plaintiff nor plaintiff's counsel raised any objection to the reasonableness of this amount in their briefing in response to our

---

[5] We need not discuss at length whether plaintiff's discussion of the substantive law governing his claims is also frivolous, as defendants have contended in their motion for sanctions. Suffice it to say for present purposes that we do not find the discussion of the substantive law in plaintiff's briefs to be so far beyond the pale as to be not only without merit, but also frivolous. It is the application of these arguments to a patently inadequate record that persuades us sanctions are appropriate. And it is on this point that we part ways with the dissent, which focuses on the issues that plaintiff might have plausibly argued, had the record not been wholly inadequate.

order issued September 9, 2014, and raised only the general objection that it is "too high" at oral argument. We find the requested amount reasonable, and will award it to defendants. (See *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 558 (*Kleveland*) [finding requested amount of $52,727.56 in attorney fees and costs related to appeal reasonable].)

Additionally, we note with approval that courts with increasing frequency have imposed additional sanctions, payable to the clerk of the court, to compensate the appellate system and the taxpayers of this state for the cost of processing a frivolous appeal. (See *Kleveland*, *supra*, 215 Cal.App.4th at p. 559.) A relatively recent estimate of the cost of processing an appeal that results in an opinion by the court is approximately $8,500. (*Id.* at p. 560 [citing *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520].) We find this amount appropriate for sanctions here.

In our September 9, 2014 order, we considered imposing such sanctions against both plaintiff and his now-former counsel, Mr. Creamer, jointly and severally, leaving it up to plaintiff and his lawyer to determine "'how responsibility for the expenses should be allocated between client and counsel.'" (See *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 28, fn. 6.) Nothing in our record, however, suggests that plaintiff had any role in the preparation of the record on appeal, or Mr. Creamer's decision to prepare the record as he did. We conclude, therefore, that the sanctions should be issued against Mr. Creamer alone.

11

### III. DISPOSITION

The judgment appealed from is affirmed. Defendants' motion to dismiss is denied as moot. Defendants' motion for sanctions is granted on the following basis: Plaintiff's former counsel, Michael F. Creamer, is hereby ordered to pay $19,945 to defendants and $8,500 to the clerk of this court as sanctions for maintaining a frivolous appeal. The sanctions are to be paid within 30 days of the date this court issues its remittitur. Failure to pay the sanctions will result in this court issuing an order to show cause why Mr. Creamer should not be held in contempt.

The sanctions payment to defendants includes an award of costs on appeal, so no separate award of costs is appropriate.

Upon issuance of the remittitur, the clerk is directed to forward a copy of this opinion to the State Bar of California. (Bus. & Prof. Code, § 6086.7, subd. (a)(3).) This opinion shall serve as notice to counsel that the matter of the sanctions imposed has been referred to the State Bar. (Bus. & Prof. Code, § 6086.7, subd. (b).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
Acting P. J.

I concur:


CODRINGTON
J.

12

King, J., Concurring and Dissenting.

I disagree with the majority as it relates to issuing sanctions. The majority determines the appeal is "frivolous" on the ground that plaintiff and appellant Alan Hasso failed to provide an adequate record of the lower court proceedings. The majority concludes the appeal "lacks merit under . . . *Flaherty* . . . ."[1]

"[S]anctions should be imposed sparingly, in only the most egregious case . . . . [¶] . . . [¶] '[A]ny definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. . . .'" (*In re Reno* (2012) 55 Cal.4th 428, 512-513.)

"An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*Ibid.*)

Here, there is absolutely no evidence that the present appeal was brought for an improper motive, to harass defendants, or delay the effect of an adverse judgment. There is nothing to indicate subjective bad faith of plaintiff's counsel. (See *In re Marriage of*

---

[1] *In re Marriage of Flaherty* (1982) 31 Cal.3d 637.

1

*Flaherty, supra,* 31 Cal.3d at p. 651.) I therefore turn to the issue suggested by the majority—that being whether the appeal, in the absence of a complete record, "indisputably has no merit." To resolve this issue it is necessary to discuss the appellant's appendix, the trial court's ruling on the motions for nonsuit, and the issues presented on appeal.

As evident from appellant's appendix and the briefs on file, litigation between some of the parties has been ongoing for over a decade. In 2000, defaults were entered in Orange County Superior Court against defendants Gary Stanhiser, D. Robert Johnson, Odette Johnson, and the Johnson Family Trust. In 2001, the matter went to jury trial against other answering defendants. Plaintiff proved up damages against the defaulting defendants and obtained a money judgment against the answering defendants.

Thereafter, in 2005, plaintiff filed an action in the Rancho Cucamonga division of the San Bernardino County Superior Court for fraudulent conveyance and conspiracy to commit a fraudulent conveyance. The action was filed against the previously referenced Johnson defendants, as well as two of the respondents herein, J.S.B. Financial Corporation and Ozcorp Funding. The essence of the suit was that defendants fraudulently conveyed or were involved in the fraudulent conveyance of property so as to protect said property from execution of the Orange County judgment. In June 2009, the trial court entered default judgments against the Johnson defendants, as well as J.S.B.

2

Financial Corporation and Ozcorp Funding. Following entry of the default judgments, J.S.B. Financial Corporation and Ozcorp Funding moved to set them aside. The motion was denied and an appeal to this court ensued.

While it is unclear from our record when the present action was filed, the appellant's appendix contains an amended complaint filed October 5, 2009. Named as defendants are J.S.B Financial Corporation and Ozcorp Funding, along with four new defendants: J & J Real Estate Holdings, LLC, Emanuel Jacobson, David Jacobson, and Jacobson David Enterprise, Inc. The essence of the complaint is that the various entities and persons fraudulently conveyed assets for purposes of circumventing execution. The complaint included causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent conveyance, aiding and abetting fraudulent conveyance, and alter ego liability. Following the presentation of plaintiff's case, each defendant moved for nonsuit. The motions were based primarily on the argument that there was no evidence to support any of the claims. Some of the defendants also asserted that as a matter of law an officer or member of a board of directors does not owe a fiduciary duty to creditors of the corporation and that plaintiff suffered no damage.

In granting the motions, the trial court, in addition to addressing the paucity of evidence supporting the various theories, stated as to the cause of action for breach of fiduciary duty: "Generally speaking, the directors of a corporation do not owe any fiduciary duty to creditors. That duty, if there were one, would conflict with the fiduciary duty that the directors owe to the shareholders of the corporation and to the corporation

3

itself. Berg & Berg sets forth an area of exception for that. And this case doesn't fall within that exception." As to damages, the court indicated at the outset: "I don't see that Mr. Hasso has any damage or that these claims are legally cognizable." Later the court indicated: "[T]he big problem overriding everything in this cause of action and all the other causes of action, where is the damage? I haven't heard any evidence in plaintiff's case of damages. There seems to be an assumption that the judgment in Rancho Cucamonga that was obtained by default of $3 million both establishes and quantifies the damages against the defendants in this case. That seems to be the assumption. I don't know why that would be. It's not collateral estoppel as to these individuals. I don't even know that it was considered. I don't know what Judge Hildreth took in—in to consideration, if anything, in determining the amount of damages." And lastly, "the transactions have been unwound, Mr. Hasso is in exactly the same position with respect to that Loma Linda property now as he was when he got his first judgment against Dr. Johnson back whenever it was."[2]

I wholeheartedly agree with the majority that we are incapable of doing a proper review based on the record provided; I cannot say however that the appeal "indisputably lacks merit" such that an award of sanctions is warranted. As discussed above, much of the trial court's rationale for granting the various motions was: (1) in the absence of

---

[2] The motions were granted on May 23, 2011, and plaintiff filed a notice of appeal on October 24, 2011. In the period between May 23 and October 24, our court rendered its decision in the prior appeal affirming the trial court's denial of the various motions to set aside default judgments.

4

certain facts, a corporate officer or director does not owe a fiduciary duty to creditors of the corporation; (2) the effects of collateral estoppel or res judicata do not flow from the Rancho Cucamonga default judgments; and (3) because plaintiff had already obtained possession of the Loma Linda property pursuant to the Orange County judgment, he had not sustained any damage from the alleged torts.

In viewing appellant's opening brief, it is exactly these three issues which are addressed. In his first argument, plaintiff, citing to authority, submits that a default judgment can be used as a basis for res judicata in establishing his damages and that Emanuel Jacobson and David Jacobson are in privity with the defaulting defendants and are thus collaterally estopped to dispute the damages. In the second argument, it is submitted that under Civil Code section 1708, corporate directors can be liable to a creditor on a theory of breach of fiduciary duty. Lastly, plaintiff asserts that even if the Loma Linda transaction was unwound, defendants can nonetheless be liable on a common law tort theory.

Counsel's failure to provide a complete record, while clearly inexcusable, does not rise to the level of sanctionable conduct. We often get appeals where the record is incomplete, there is a failure to cite authority, a failure to cite to the record, or the inclusion of extraneous matters having nothing to do with the appeal. It is simply part of a process which is intended to offer litigants their day in court and due process.

5

"[S]anctions should be imposed sparingly, in only the most egregious case . . . ."

(*In re Reno, supra,* 55 Cal.4th at pp. 512-513.)

This simply is not that case.  Here, plaintiff had cognizable issues to argue.

KING

J.
